UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In Re:

    Jane E. Jones,　　　　　　　　　　　　　　Case No. 03-21929
　　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　　　　　　Debtor.

# DECISION AND ORDER
# DENYING MOTION TO REOPEN CHAPTER 7 CASE

PAUL R. WARREN, United States Bankruptcy Judge

    Jane E. Jones ("Jones") moved to reopen her voluntary Chapter 7 case—13 years after she filed for relief and received a discharge under 11 U.S.C. § 727—so that she can file an amended Schedule A, disclosing (for the first time) her interest in a parcel of real property. Candidly conceding that the unsecured creditors listed by her in 2003 are probably long-gone, or not likely to file allowable claims were her case reopened, Jones ultimately seeks to have the undisclosed property abandoned to her under 11 U.S.C. § 554. Deciding whether to permit a case to be reopened under 11 U.S.C. § 350(b) is committed to the sound discretion of the bankruptcy judge. Having carefully considered her affidavit, sworn to on December 18, 2015, the supporting affidavit of her attorney, signed under Rule 9011 FRBP on February 26, 2016—affirmatively asserting full familiarity with and adopting the facts as alleged by Jones—and after listening to Jones's testimony and assessing her credibility at an evidentiary hearing held on March 24, 2016, the Court exercises its discretion in declining to reopen this case. The motion by Jones is in all respects **DENIED**.

# I.

# JURISDICTION

The Court has jurisdiction of this matter under 28 U.S.C. §§ 157(a), 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(1). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

# II.

# FACTS

On April 26, 1996, Robert R. Tougher died. He was Jones's father (ECF No. 20, Debtor Aff. ¶ 5). At the time of his death, Mr. Tougher owned real estate located at 566 Frey Road, Macedon, New York ("Property"). The Property was nearly one acre in size, on which was a mobile home (where Mr. Tougher had lived). Mr. Tougher made his last wishes known through his will. He left the Property to Jones, her sister Betty Jean, and her two brothers Robert Jr. and Dale. The will was probated by the Wayne County Surrogate's Court, with Robert Jr. serving as executor. Jones recalled that she and her siblings signed waiver of process forms in connection with the probate proceeding.

On April 21, 1997—nearly one year after Mr. Tougher died—his estate, acting through Robert Jr., transferred ownership of the Property equally to Jones, her sister, and two brothers by a deed recorded in the Wayne County Clerk's Office in Deed Book 932, page 261 (identified as deed number R8173664).[1] A few years later, on January 16, 2000, Jones and her siblings entered into a "Conditional Sales Contract" with Nancy and Jeremy Dewitt ("Contract"). Under the

---

[1] Under Rule 201(b)(2) of the Federal Rules of Evidence, the federal courts may take judicial notice of information contained in public records and maintained by a County Clerk or Recorder, for example.

Contract, Jones and her siblings sold the Property to the Dewitts for $40,000 plus annual interest of 8.5%, payable in equal monthly installments over 15 years (ECF No. 29). In May 2000, Jones received a check for $270.00 from her brother, Robert Jr.—and she continued to receive a check in that amount every three months, *for 15 years*.[2] Jones admits that she knew that she was entitled to receive regular payments under the Contract and that those payments would continue for 15 years (ECF No. 20, Debtor Aff. ¶ 17). Jones did not disclose the payments on her income tax returns (ECF No. 20, Debtor Aff. ¶¶ 13, 14).

In May 2003, Jones filed a voluntary petition under Chapter 7 of the Bankruptcy Code (ECF No. 1). Jones listed her interest in 1758 Walker Road, Palmyra, New York—her home (ECF No. 2, Schedule A; ECF No. 20, Debtor Aff. ¶ 4). She did not disclose her interest in the Property in her schedules (ECF No. 2, Schedule A). She did not disclose her right to payments under the Contract in her schedules (*See* ECF No. 2, Schedule B # 17, 18, 20; Schedule I "income from real property"; Statement of Financial Affairs # 2 "all other income"). She did not come clean by mentioning those assets at the meeting of creditors held on June 24, 2003.[3] On June 30, 2003, the Trustee filed a "No Asset Report" after reviewing Jones's bankruptcy schedules, recent tax returns, and after examining Jones under oath at the meeting of creditors. On September 10, 2003, Jones was granted an Order discharging her from her unsecured, dischargeable debts (ECF No. 18). On October 6, 2003, the bankruptcy case was closed.

---

[2] Payments for 2004 and 2005 were offset by Robert Jr. to cover a veterinary bill Jones incurred in early 2003 to care for her dog (ECF No. 20, Debtor Aff. ¶ 17). Interestingly, in Schedule F, Jones does not list any debt owed for veterinary services.

[3] Trustees routinely ask debtors whether they have an interest in any other assets of any kind that are not listed in their schedules. *See* Private Trustee Handbooks, U.S. Dep't of Justice, https://www.justice.gov/ust/private-trustee-handbooks-reference-materials.

The Contract celebrated 15 birthdays—during which it matured from its infancy to its teenage years.[4] Statutes of limitation expired under Titles 11 and 18 of the United States Code. The Contract reached adulthood in 2015—it was now time for Jones to transfer "good and marketable title" to the Property to the Dewitts (ECF No. 29 ¶ 6). And then, on March 1, 2016, Jones filed a motion to reopen her Chapter 7 case, so that she could schedule her ¼ interest in the Property and obtain abandonment of the bankruptcy estate's interest in the Property under 11 U.S.C. § 554(b) (ECF No. 20). The Clerk issued a deficiency notice advising Jones's counsel that the Court—Rochester Division—requires motions to reopen a closed case under 11 U.S.C. § 350(b) to be brought on notice to all affected parties in interest.[5] On March 10, 2016, counsel filed an amended motion, with proof of service on Jones's creditors (ECF No. 24).[6]

The Court conducted an evidentiary hearing on the motion on March 24, 2016, at which Jones testified. Jones responded to the Court's invitation to explain the facts—in her own words—but instead she robotically repeated the same carefully chosen words and phrases as in the affidavit she submitted in support of the motion. The only evidentiary support for the motion that was offered by Jones was a copy of the Contract—disclosed to the Court by Jones and her attorney for the first time at trial, and only after the Court asked Jones to explain her use of the precise legal term, "conditional sales contract," in her affidavit and her testimony (ECF No. 20,

---

[4] "The water of the fountain ran, the swift river ran, the day ran into evening . . . time and tide waited for no man . . . all things ran their course." Charles Dickens, *A Tale of Two Cities* 70 (James R. Osgood & Co. 1873).

[5] *See In re Gill*, 529 B.R. 31, 34 n.2 (Bankr. W.D.N.Y. 2015) (Warren, J.).

[6] The motion does not appear to have been properly served under Rule 7004 FRBP. No matter. The Court need not decide the issue on procedural grounds, as that would simply further delay a decision on the merits.

4

Debtor Aff. ¶ 17). Not only did Jones admit knowing of the existence of a conditional sales contract for the Property, she had an executed copy of the Contract in her possession. But because the checks she received from Robert Jr. (for 15 years) *did not reference Mr. Tougher's estate*, and because *the checks were not from an attorney's office*, and because *she was never served with a time-stamped copy of the deed*, Jones claims that she "was unaware [until she received the last check in 2015] that her late father left her, and her siblings, [the Property]" (ECF No. 20, Debtor Aff. ¶¶ 11-20; *Id.*, Attorney Aff. ¶ 8).

## III.
## DISCUSSION

The Bankruptcy Code vests bankruptcy judges with discretion to determine whether to reopen a closed case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *In re Gill*, 529 B.R. 31, 36 (Bankr. W.D.N.Y. 2015) (Warren, J.); *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008); *In re Schick*, No. 96-42902 (SMB), 2008 Bankr. LEXIS 935, at *6 (Bankr. S.D.N.Y. Mar. 19, 2008). In determining whether "cause" exists to reopen a closed case, courts may "'consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations.'" *Gill*, 529 B.R. at 36 (quoting *In re Wiggins*, No. 12-3341, 2013 Bankr. LEXIS 3587, at *3 (Bankr. S.D.N.Y. Aug. 29, 2013)). The factors for the Court to consider include:

(1) the length of time that the case was closed;

(2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case;

(3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum;

5

Case 2-03-21929-JCN    Doc 31    Filed 03/30/16    Entered 03/30/16 14:57:07    Desc Main
Document      Page 5 of 13

> (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;
>
> (5) the extent of the benefit to the debtor by reopening; and
>
> (6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen.

*Gill*, 529 B.R. at 36 (quoting *Wilson*, 492 B.R. at 695).

Additionally, in deciding motions to reopen bankruptcy cases to administer an undisclosed asset that is property of the bankruptcy estate, courts have adopted two differing approaches. One approach does not necessarily consider the debtor's good faith, if reopening a case would add an asset that would *benefit creditors of the bankruptcy estate*. *Lowery*, 398 B.R. at 515 (emphasis added); *see In re Lopez*, 283 B.R. 22, 30 (9th Cir. BAP 2002) ("We do not decide whether a former debtor's alleged bad faith or lack of good faith is a factor at all when creditors' interests are at stake. Assuming it is a factor, we hold that it is insufficient to preclude reopening if there is prima facie proof from which a chapter 7 trustee could reasonably determine that administering a previously undisclosed asset could benefit creditors."); *In re Dewberry*, 266 B.R. 916, 921 (Bankr. S.D. Ga. 2001) (holding that "when reopening of the case is sought for the purpose of administering a previously undisclosed asset, the question of a debtor's good faith is irrelevant"). The other view—and it is the view with which this Court agrees—is that good faith of the debtor is an important factor to be considered in deciding a motion to reopen a bankruptcy case to include an undisclosed estate asset. *Lowery*, 398 B.R. at 515; *see Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) (inferring from the record that "this case contains sufficient evidence from which to infer intentional manipulation by [the debtor]" and declining to reopen the case); *In re Koch*, 229 B.R. 78, 87-88 (Bankr. E.D.N.Y. 1999) ("Were this Court to condone Koch's conduct under the facts in this case, it would encourage debtors to

6

conceal their assets to have the claims of their creditors discharged, and then, as was done by Koch in his case, commence an action to realize the value of those assets without their participation.").

In this case, even were the Court to adopt the first approach, Jones's motion would fall short. Under the first approach, there must be a *benefit to creditors of the bankruptcy estate*. Here, any nondischargeable unsecured creditors of Jones would necessarily have claims arising before May 15, 2003—the date she filed her bankruptcy case 13 years ago. Jones scheduled unsecured debts totaling $13,930.50, incurred between 1999 and 2003 (ECF No. 2, Schedule F). The passage of so many years in this case has likely rendered hollow the idea of providing a "benefit to creditors of the bankruptcy estate," as was best described by Judge Feller:

> In order to receive a distribution, these creditors must file proofs of claim. *See* Fed. R. Bankr.P. 3002(a). Taking into account the passage of 10–14 years and the mandated form and content of proofs of claim, including required documentation, it is likely that proofs of claim will not be filed by at least some of these creditors within a bar date to be fixed by the court, if this former no asset case was to be reopened. *See* Fed. R. Bankr.P.2002(e), 3001(a), 3002(c)(5) and Official Form 10. As a practical matter, no real benefit from reopening the case will be enjoyed by anyone other than . . . the former Debtor.

*Lowery*, 398 B.R. at 516. Of the unsecured creditors listed by Jones in Schedule F, a number of them have ceased to exist as the result of mergers or acquisitions. It may also be that, even if Jones's creditors managed to file properly documented proofs of claim, those claims could be barred by the statute of limitations under New York law—and as a result not allowable under 11 U.S.C. § 502(b)(1)—unless Jones's conduct could have revived or tolled those claims. *See In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009); *see also In re Freeman*, 540 B.R. 129, 136-37 (Bankr. E.D. Pa. 2015). That speculative legal issue is not before the Court. It appears that it is

7

Jones who will enjoy the benefits of the undisclosed estate assets should the Court reopen her case, not her long-lost creditors.

Applying the second approach, the Court considers Jones's claim of good faith to be questionable in this case. The excuse offered by Jones for her failure to disclose her interest in the Property for 13 years was that she was innocently unaware that she and her siblings had inherited the Property until recently (ECF No. 20, Attorney Aff. ¶ 8; *Id.*, Debtor Aff. ¶¶ 8-16).[7] In her testimony at trial, Jones repeatedly claimed that she "didn't put it all together." Despite the filing of a deed conveying title to the Property to Jones and her siblings in 1997, and despite the fairly plain language of the January 2000 Contract—an executed copy of which Jones possessed—by which the Property was conditionally sold, Jones insists that until 2015 she did not know that she co-owned the Property. How could that be possible? Common sense offers a suggestion—it can't be.

"As the time between closing a bankruptcy case and its reopening increases, so must the cause for reopening increase in weight." *Lowery*, 398 B.R. at 515-16 (citing *Citizens Bank & Trust Co. v. Case*, 937 F.2d 1014, 1018 (5th Cir. 1991)). "The absence of good faith in

---

[7] Troublingly, Jones's attorney joins her in affirmatively asserting that, as a matter of fact, Jones "was unaware that her father had left her, and her siblings, [the Property]" (ECF No. 20, Attorney Aff. ¶ 8). Seemingly, counsel would have the Court believe that Jones's ownership interest in the Property was just recently discovered—despite counsel's possession of an executed copy of the Conditional Sales Contract, dated January 16, 2000, by which Jones and her siblings transferred the Property and financed the purchase price (*See* ECF No. 29). That document was provided to him by Jones before counsel drafted and filed the motion. Even after the Court received the Contract in evidence and reminded counsel of his obligation—under Rule 9011(b)(3) FRBP—to have evidentiary support for factual allegations presented to the Court, counsel persisted in arguing that cause to reopen existed—to now schedule the Property— because Jones was not aware of her ownership interest in the Property until quite recently. There is no evidentiary support for that factual allegation by Jones's attorney.

nondisclosure may be inferred from the record. As a general proposition, a debtor's failure to satisfy a statutory disclosure duty may be deemed inadvertent or the product of an innocent mistake when the debtor either i) lacks knowledge of the undisclosed matter, or ii) has no motive for its concealment." *Id.* at 516. Jones's claim that she lacked knowledge of her co-ownership of the Property is simply not credible, particularly in light of the execution of and receipt of payments under the Contract beginning 3 years before she filed her bankruptcy case. Jones also had the motivation to conceal her interest in the Property, keeping for herself the payment stream due under the Contract. While the sum total of those payments did not amount to a king's ransom, to Jones—a single parent and self-employed day care operator—it may have. Now that Jones and her family have been called on to execute and deliver a "general warranty deed, transferring good and marketable title" to the Property, she has (finally!) found it necessary to come clean (*See* ECF No. 29 ¶ 6; ECF No. 20, Debtor Aff. ¶ 19).

Faced with resolving a dispute concerning whether a particular asset was property of a bankruptcy estate, the Second Circuit instructed:

> Our analysis begins with 11 U.S.C. § 541(a)(1), which defines the bankruptcy estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case." "It would be hard to imagine language that would be more encompassing" than this broad definition. 4 *Collier on Bankruptcy* ¶ 541.01 (15th ed.2001). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993). Contractual rights clearly fall within the reach of this section.

*Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008), *cert. denied*, 555 U.S. 1213 (2009). Applying the broad scope of 11 U.S.C. § 541, together with a debtor's "equally broad" statutory obligation to disclose all assets at the commencement of a case, the Second Circuit went on to remind us that:

9

> Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets: While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, *undisclosed assets automatically remain property of the estate after the case is closed. See* 11 U.S.C. § 554(c), (d) . . . "A debtor may not conceal assets and then, upon termination of the bankruptcy case, utilize the assets for [his] own benefit."

*Id.* (emphasis added) (citations omitted).[8]

And so it is for Jones. Unlike the dispute in *Chartschlaa*, there is no dispute here concerning the fact that Jones became a co-owner of the Property on April 21, 1997. There is no dispute that Jones and the co-owners conditionally sold the Property on January 16, 2000 under the Contract. There is no dispute that Jones had the right to receive payments under the Contract for 15 years, in consideration for selling her ¼ interest in the Property. By operation of 11 U.S.C. § 541(a)(1), her interest in the Property and her rights under the Contract became assets of her bankruptcy estate immediately upon filing of that case. Jones had a statutory obligation to disclose those assets under 11 U.S.C. § 521(a)(1)(B). As a result of her nondisclosure, those "undisclosed assets automatically remain property of the estate after the case is closed." 11 U.S.C. § 554(c), (d); *Chartschlaa*, 538 F.3d at 122; *see also Schick*, 2008 Bankr. LEXIS 935, at *7.

Returning to the *Gill* factors, the Court concludes that Jones has failed to demonstrate "cause" under 11 U.S.C. § 350(b). As an important starting point, the Court finds that Jones did not act in good faith. "Full and honest disclosure in a bankruptcy case is crucial to the effective

---

[8] Oddly, the only case cited by Jones's counsel at oral argument was *Chartschlaa*. Counsel suggested that because the Property automatically remained property of the bankruptcy estate after the case was closed, this Court is *required* to grant abandonment—presumably to remove the cloud on title. Counsel is mistaken.

10

functioning of the bankruptcy system." *Lowery*, 398 B.R. at 515. The remaining *Gill* factors to be considered are factors 1, 2, 4, and 5.

### ***Gill* Factor 1 (Length of Time That the Case Was Closed) Weighs Against Reopening.**

It has been 13 years since the bankruptcy case was closed, during which Jones received regular (but undisclosed) payments under the Contract in exchange for her ownership interest. The passage of time has worked in favor of Jones and to the detriment of the estate's creditors. Reopening this case and sending an "asset notice" to her creditors would most likely be an exercise in futility because of the passage of so much time.

### ***Gill* Factor 2 (Whether a Nonbankruptcy Forum Has Jurisdiciton) Weighs Against Reopening.**

Jones will not receive her hoped-for order of abandonment from this Court under 11 U.S.C. § 554(b). And because neither the Property nor the Contract were ever scheduled under Section 521(a)(1) of the Bankruptcy Code, Jones cannot assert that those assets have been statutorily abandoned under 11 U.S.C. § 554(c). Those undisclosed assets remain "property of the estate" by operation of 11 U.S.C. § 554(d). *See Chartschlaa*, 538 F.3d at 122. The New York State courts have jurisdiction to determine the issue which is the true motivation for Jones seeking reopening—namely, the rights and remedies to which the Dewitts may be entitled under New York law. The Dewitts are strangers to the bankruptcy case. They were not creditors or parties in interest. The dispute that lurks does not arise under Title 11, nor is it related to Jones's long-closed bankruptcy case. To the extent even a speck of jurisdiction could be found in this Court, the Court abstains under 28 U.S.C. § 1334(c)(1) in the interest of comity with the State courts and out of respect for State law.

### *Gill* Factor 4 (Whether Any Parties Would Suffer Prejudice) Weighs Against Reopening.

The "parties" to this bankruptcy case—the unsecured creditors—have already suffered prejudice. That prejudice probably cannot be remedied at this late date. What should have been an asset case was closed as a no asset case. The ability of Jones's unsecured creditors to respond now to an "asset notice"—with properly documented and timely proofs of claim, based on a right to payment that still exists under state law—flickered out and grew cold years ago.

The Dewitts were not parties to the bankruptcy case. The legal issue created by the statutory nonabandonment of the Property and Contract is a matter of State law. The Dewitts will certainly be *inconvenienced* by this Court's exercise of discretion to not reopen Jones's case. They will not be *prejudiced*, however. The Dewitts have rights under the Contract—including the right to recover attorney's fees and costs if successful—and remedies under New York law (ECF No. 29 ¶ 13). The Dewitts can pursue their rights in the State courts and under State law.

### *Gill* Factor 5 (Extent of Benefit to Jones) Weighs Against Reopening.

There is no question that Jones would benefit greatly were the case reopened. She would likely be made to repay the money she received under the undisclosed Contract, but only to the extent of properly filed and allowable proofs of claim. It is highly unlikely that there would be any properly filed proofs of claim, and if there were, that those claims could survive objections under 11 U.S.C. § 502(b) and Rule 3007 FRBP. Her offer to repay the money she received under the Contract (made at trial, not in the motion) is illusory. Jones seems to be keenly aware of that, because her motion demands abandonment under 11 U.S.C. § 554(b). Seemingly, by citing § 554(b), Jones and her attorney recognize that the dollar amount of *any* repayment from Jones would be "of inconsequential value and benefit to the estate."

12

The granting of an order of abandonment would allow Jones to convey "good and marketable title" to the Property—enabling Jones to duck the legal problems she may have brought on herself. To do so would effectively reward Jones for her 13-year continuing nondisclosure of estate assets. "The public interest in the systemic integrity of the bankruptcy process dictates that a bankruptcy court should withhold relief that encourages the concealment of assets by debtors." *Lowery*, 398 B.R. at 516. The Court will not accept Jones's invitation to turn a blind eye to the signals pointing toward bad faith, so that she can have the undisclosed assets abandoned back to her. That seems a bit like a parent rewarding a child who was caught hiding her failing report card with a hot fudge sundae.

Weighing all of the relevant *Gill* factors demonstrates the absence of cause to reopen under 11 U.S.C. § 350(b). In the exercise of its discretion, the Court declines to grant Jones's motion.

## IV.

## CONCLUSION

The Court finds that, on the record before it and after assessing Jones's credibility at trial, the former Debtor has failed to demonstrate cause to reopen her long-closed case under 11 U.S.C. § 350(b). The Court, in the exercise of its discretion, declines to permit the case to be reopened. The former Debtor's motion to reopen this case is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 30, 2016 /s/
       Rochester, New York        HON. PAUL R. WARREN
                                    United States Bankruptcy Judge

Case 2-03-21929-JCN    Doc 31    Filed 03/30/16    Entered 03/30/16 14:57:07    Desc Main
Document      Page 13 of 13